IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>TANNER HUDSON,<br><br>　　　　　Defendant. | 4:22CR3120<br><br>FINDINGS, RECOMMENDATION<br>AND ORDER |

　　　　Defendant Tanner Hudson ("Hudson") moves to suppress his statements to investigating officers made on April 15, 2022, as well as the contents of his cell phone. Filing No. 71. Hudson argues his Fifth Amendment rights were violated when he made the statements to officers and consented to the search of his cell phone, and the search of his cell phone violated his Fourth Amendment rights as his consent was not voluntarily given. The Court held an evidentiary hearing on Defendant's motion on April 24, 2024. The Court stated the motion would be deemed submitted upon receipt of the transcript. The transcript was filed on May 20, 2024. This matter is now ripe for disposition.

　　　　As explained below, the undersigned recommends the motion to suppress be denied.

STATEMENT OF FACTS

　　　　After reviewing the evidence submitted at the hearing and hearing the testimony of Investigator Cody Bolte, the undersigned magistrate judge finds the following facts are credible.

1

On April 15, 2022, Cody Bolte was working as an investigator in the Criminal Investigations Bureau of the Kearney Police Department. Filing No. 97 at 4. Hudson had been arrested on an unrelated warrant and was transported to the Law Enforcement Center. *Id*. According to Investigator Bolte, Officer Hibberd arrested Hudson and presented him to Investigator Bolte for questioning. *Id.* at 14. Upon meeting Hudson, Investigator Bolte advised Hudson that he was under arrest on an unrelated warrant and Bolte was investigating the drug overdose of one of Hudson's friends. Filing No. 92, Exhibit 102 at 4. Investigator Bolte did not speak to Hudson prior to the interview that was recorded and transcribed and entered into evidence for this proceeding. Filing No. 97 at 12.

Investigator Bolte told Hudson that he was not there to question him about the investigation underlying the warrant but would still advise Hudson of his *Miranda*[1] rights because Hudson was under arrest. *Id.* at 7-10. Investigator Bolte advised Hudson of his rights pursuant to *Miranda* and Hudson signed the form waiving those rights and agreeing to talk to Investigator Bolte. *Id.*; Filing No. 92, Exhibit 1. Investigator Bolte went on to question Hudson for approximately 40 minutes. According to Bolte, at no time did he raise his voice or yell at Hudson, and the tone of the conversation remained cordial throughout the interview. Filing No. 97 at 7.

At some point in the conversation, it became evident that Hudson was in the possession of a cell phone that Investigator Bolte believed would contain information that would assist in his investigation. Filing No. 97 at 7. Initially, Investigator Bolte advised Hudson that he intended to get a search warrant for Hudson's phone. Filing No. 92, Exhibit 102 at 30. Investigator Bolte told Hudson it would likely be processed the following week. *Id.* After consulting with another law

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

enforcement officer, Bolte sought Hudson's consent to search his phone. Filing No. 97 at 8; Filing No. 92, Exhibit 102 at 45. The following exchange occurred:

> Bolte: Okay. So when I talked to - - when I talked to our guy that downloads the cell phones, he said that if you're willing to give consent for a download on your phone, that we can do it that way.
>
> I'll be open with you, you're going to jail, right? So we'll obviously probably, no matter what, keep it. At least until you get out of jail.
>
> Hudson: Mm-hmm
>
> Bolte: Okay. So that's the first thing. If you're willing to give consent, we can do it that way. That's a hundred percent up to you. It's consent. So it's a hundred percent up to you. You don't have to.
>
> Hudson: Right.
>
> Bolte: Okay.

Filing No. 92, Exhibit 102 at 45.

Hudson then requested to call his attorney before giving his consent. Filing No. 92, Exhibit 102 at 45-46. Investigator Bolte agreed. *Id.* Hudson then made two calls in an attempt to contact his attorney. *Id.*; Filing No. 97 at 9. Hudson reached

3

someone at his attorney's office but did not actually speak with his attorney. Filing No. 92, Exhibit 102 at 46-47.

After Hudson attempted to reach his attorney, Investigator Bolte again clarified that Hudson is under arrest for the unrelated warrant but does not ask Hudson questions. Filing No. 92, Exhibit 102 at 48. Unprompted, Hudson apologized for lying to Investigator Bolte. Id. He then offered his consent to search his phone. Id. at 49. The following exchange occurred:

> Bolte:  It's one hundred percent consent. Okay? If you don't want to give consent. That is okay. I still have to take the phone and I would apply for a search warrant to search the phone.
>
> Again, but that is – that is one hundred percent up to you. Okay?
>
> Hudson: Mm-hmm. Yeah.
>
> You can – you can search it.

Id. at 49. Investigator Bolte then went through the consent form with Hudson. Id. at 51. Investigator Bolte provided Hudson with his contact information and advised him that he could withdraw his consent at any time. Filing No. 97 at 9; Filing No. 92, Exhibit 102, p. 51.

Prior to signing the consent form, Hudson commented that Investigator Bolte will get the information "eventually" because Investigator Bolte will seek a warrant

4

to search the phone. Filing No. 92, Exhibit 102, p. 51. Investigator Bolte clarified that he intended to apply for a warrant but that doesn't mean a judge will sign it.

> Hudson: I mean, you're getting a warrant. You'll eventually get it any ways.
>
> Bolte: I mean, I can't say that. I'm going to apply for one. That doesn't mean a judge would sign it. Okay? I can't say that – I don't want to coerce you into giving me consent.
>
> Hudson: Right.
>
> Bolte: That's my thing. I want you to understand, it's one hundred percent consent. It's not me telling – I mean, yes. I'm going to apply for a warrant. I promise you that, if you don't give consent. But it's ultimately up to a judge –
>
> Hudson: Right.

Filing No. 92, Exhibit 102, p. 51. Hudson again considered waiting until after he spoke with his attorney. Id. at 52. After asked by Hudson, Investigator Bolte provided that Hudson would not receive his phone back on Monday if Investigator Bolte obtains a warrant. Id. Investigator Bolte again stated that providing consent is "one hundred percent up to [Hudson]." Id. Hudson then proceeded to sign and date the consent form and provide Investigator Bolte the pass code for his phone. Id. at 52-53; Filing No. 92, Exhibit 2.

At no point prior to discussing consent to search his phone did Hudson ask Investigator Bolte to speak with an attorney. Filing No. 97 at 15; Filing No. 92,

5

Exhibit 102. When asking to contact his attorney in relation to the cell phone search, Hudson said "Hopefully, he'll answer. He didn't answer earlier." Filing No. 92, Exhibit 102, p. 46. Investigator Bolte did not follow up on this statement and testified that he was unaware that Hudson made this statement until he reviewed the transcript and video of the interview.[2] Filing No. 97 at 34.

## ANALYSIS

**1. Statements against Interest**

Hudson argues the statements he provided to Officer Bolte on April 15, 2022, should be suppressed because Officer Bolte violated *Miranda* and his statements were involuntary.

### a. Waiver of *Miranda*

Law enforcement officers are required to warn criminal suspects of their constitutional rights to counsel and against self-incrimination before performing custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436 (1966).

> Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 475, 86 S.Ct. 1602. The inquiry has two distinct dimensions. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences

---

[2] The evidence discussed in the parties' briefing goes beyond the evidence presented at the hearing. While heavily implied in the briefing and argument, there was no evidence presented, other than the brief comment by Hudson himself, that Hudson attempted to contact an attorney prior to sitting down to speak with Investigator Bolte. Additionally, there was no evidence presented about Hudson's attorney attempting to contact Hudson while at the police station.

of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Bell v. Norris*, 586 F.3d 624, 630 (8th Cir.2009) (internal citation omitted). The determination of whether a defendant has knowingly and voluntarily waived his Miranda rights is "an extremely fact sensitive analysis." *United States v. Nguyen*, 608 F.3d 368, 374 (8th Cir.2010) (citing *United States v. Boyd*, 180 F.3d 967, 977 (8th Cir.1999)).

In this case, the evidence before the Court indicates Hudson was 24 years old and of at least average intelligence and education. Filing No. 92, Exhibit 102 at 10-12 (noting Hudson attended some college). There is no indication Hudson was under the influence of drugs or alcohol or that he did not understand English. *See generally*, Filing No. 92, Exhibit 102. Investigator Bolte advised Hudson of his *Miranda* rights by reading the *Miranda* warnings directly off of the agency-approved form. Filing No. 92, Exhibit 102 at 9. Hudson orally confirmed he was willing to answer questions and signed the form acknowledging he understood his rights and waived them. Filing No. 92, Exhibit 1. Based on the facts presented, Hudson voluntarily, knowingly and intelligently waived his *Miranda* rights.

### b. Voluntariness of statements

Despite signing the form waiving his *Miranda* rights, Hudson argues that his statements were involuntarily obtained in violation of his Fifth Amendment rights. Filing No. 72 at 9. Hudson argues Investigator Bolte coerced him into making statements by playing on his emotions. Filing No. 72 at 9. More specifically, Hudson argues Investigator Bolte preyed on Hudson's emotional connection to the alleged victim by misleading Hudson regarding the fact that Investigator Bolte had not "talked to anybody yet," and by making statements indicating Investigator Bolte

7

knew Hudson was not being truthful and that his "best friend" was "brain dead." *Id.* at 10-11. Hudson further argues that certain statements made by Hudson throughout questioning indicate he was susceptible to these tactics. This includes, "I feel like a terrible person for [obtaining the pill]" and Hudson's statements indicated he hoped Rhode would recover. *Id.* at 10.

"[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Dickerson v. United States*, 530 U.S. 428, 444 (2000) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)). To determine if the defendant has presented one of those rare cases, the court must consider the totality of the circumstances surrounding the defendant's statement, focusing on both the conduct of the officers and the defendant's capacity to resist pressure to confess. *United States v. Astello*, 241 F.3d 965, 967 (8th Cir. 2001). "The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *Astello*, 241 F.3d at 967. The fact that a defendant received *Miranda* warnings weighs in favor of voluntariness. *See United States v. Mendoza*, 85 F.3d 1347, 1350 (8th Cir.1996). The government bears the burden of proving a statement is voluntary by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

After a thorough review of the relevant evidence, the Court finds Hudson's statements were voluntary. Despite Hudson's arguments, "tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices," do not "render a confession involuntary ... unless 'the overall impact of the interrogation caused the

8

defendant's will to be overborne.' " *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (quoting *U.S. v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005).). And here, the evidence shows Investigator Bolte's alleged exerted pressures did not overbore Hudson's will.

The interrogation was conversational and Investigator Bolte did not raise his voice. Filing No. 97 at 6-7. Investigator Bolte did not threaten Hudson, make promises, or use violence. *Id.* Rather, much of the information Hudson contends Bolte used to play on Hudson's emotions to "coerce" him was either offered by Hudson himself or simply factual information. The evidence shows Hudson understood the questions posed and had some prior experience with the criminal justice system, factors that weigh in favor of voluntariness. *See Brave Heart*, 397 F.3d at 1041.

After considering the totality of the circumstances, the Court finds by a preponderance of the evidence that Hudson's statements were voluntary and should not be suppressed.

### c. Invocation of the right to counsel

Hudson next argues he invoked his right to counsel sometime prior to his interview with Investigator Bolte, or prior to Bolte turning on the recording device. Filing No. 72 at 8. He contends the continued interrogation thereafter violated his Fifth Amendment rights. *Id.* Additionally, Hudson argues that he invoked his right to counsel prior to providing consent to search his cell phone. *Id.* The Court considers both in turn.

*Miranda* "established that 'a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning

9

begins.'" *Dormire v. Wilkinson*, 249 F.3d 801, 804 (8th Cir. 2001) (quoting *Davis v. United States*, 512 U.S. 452, 457 (1994)). "'A suspect must unambiguously request counsel.'" *Dormire,* 249 F.3d at 804 (quoting *Davis,* 512 U.S. at 459). Where a suspect does not "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney . . . [the law] does not require that the officers stop questioning the suspect." *Dormire,* 249 F.3d at 804-805. (quoting *Davis,* 512 U.S. at 457). An officer is not required to stop his interrogation whenever a suspect says the words "lawyer" or "attorney." *See Davis*, 512 U.S. at 459. While it may be "good police practice" to clarify whether a suspect wants an attorney present after an ambiguous reference is made, such conduct is not required by *Miranda. Id.* at 461-62.

Hudson argues he invoked his right to counsel sometime prior to his interview with Investigator Bolte. But there is no evidence to support this position and there is nothing in the record evidencing an unambiguous request for counsel prior to Hudson's interview with Investigator Bolte, or prior to the recording device being turned on. Rather, Investigator Bolte testified that he did not converse with Hudson prior to the conversation that was recorded. Filing No. 97 at 12.

During the recorded interview, the only reference made to a previous invocation is when Hudson states that his attorney did not answer "earlier." Filing No. 92, Exhibit 102 p. 46. Investigator Bolte testified that he did not hear Hudson make this comment but even if he did, a reasonable police officer in that circumstance would not understand that statement to be a request for an attorney. Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). An off-hand comment about trying to reach his attorney at some "earlier" time is not an unequivocal

request for counsel. See *United States v. Mohr*, 772 F.3d 1143, 1145 (8th Cir. 2014) (finding no invocation of counsel when defendant stated "Should I get a lawyer at this time? . . . I think I should get one.").

Additionally, this comment by Hudson occurred near the *end* of the interview. At the beginning of the interaction, Investigator Bolte clearly told Hudson what he wanted to speak to him about, asked Hudson if he would speak to him about his investigation, advised Hudson of his *Miranda* rights, and Hudson signed the waiver form. Any statements made up to this point are clearly admissible based on Hudson's voluntary waiver.

The Court next turns to whether Hudson invoked his right to counsel when attempting to contact his attorney about the search of his cell phone. Again, an individual must invoke their right to counsel clearly and unambiguously. A defendant does not invoke the right if they simply ask the interrogating officer for permission to call their attorney. *Dormire,* 249 F.3d at 805 (finding the statement, "Could I call my lawyer?" was not an unambiguous request for counsel). Further, the Court considers Defendant's statements as a whole and within the proper context when determining whether he has unequivocally invoked his *Miranda* rights. *Mohr*, 772 F.3d at 1146. (finding that the Defendant's request for a lawyer was conditioned on the interview being recorded and was properly viewed in that context); *U.S. v. Boyer*, 914 F.2d 144, 146 (8th Cir. 1990) (finding that defendant's assent to make a recorded phone call to an involved party only if he had a lawyer was a conditional request for counsel and the statements made after the conditional request "were outside of this context and therefore were admissible against him"); *United States v. Jacobs*, 97 F.3d 275, 280 (8th Cir.1996) (finding that the defendant's request for an attorney if he had to take a polygraph test was "limited to the specific circumstances of taking a polygraph test[ ]" and because he

11

did not take a polygraph test, he "was not denied his constitutional right to counsel.").

Here, Hudson states:

"Can I call my attorney first and make sure it's safe or—?"

. . .

"Can I wait until Monday to sign this when I talk to my lawyer?"

Filing No. 92, Exhibit 102 at 45, 52.

Considering these statements in context, Hudson did not make a clear and unambiguous request for counsel that would have required Investigator Bolte to stop his interrogation. Rather, Hudson's questions can be reasonably understood as Hudson clarifying whether he has the right to contact his lawyer or a request to contact counsel about the search of his cell phone. Notably, after each of these statements Hudson continues the conversation with Investigator Bolte unprompted providing additional support that Hudson did not intend to end the interrogation. A reasonable interrogator would not believe Hudson was unequivocally requesting counsel in relation to the interrogation. See *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987) (finding an invocation of counsel can be limited for specific purposes). And Investigator Bolte does not have to ask clarifying questions regarding whether or not an individual actually wants an attorney. See *Davis*, 512 U.S. at 461-62.

Based on the foregoing, the Court finds that Hudson did not invoke his right to counsel and Hudson's April 15, 2022 statements to Officer Bolte should not be suppressed.

### 2. Consent to search cell phone

Defendant argues the search of his cell phone violates his Fourth and Fifth Amendment rights. Specifically, Hudson contends that his consent to search his cell phone was obtained in violation of the Fifth Amendment because he asked to consult with his attorney prior to providing consent, and any consent obtained was not voluntarily given. Filing No. 72 at 14. Without valid consent, Hudson contends the warrantless search of his cell phone was in violation of the Fourth Amendment. *Id.*

### a. Fifth Amendment

"The fifth amendment right to counsel is not an independent right; rather, it stems from the privilege against self-incrimination." *Hall v. State*, 705 F.2d 283, 289 n.4 (8th Cir. 1983): *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). And "consent to search is not a self-incriminating statement." *Id.* citing *Smith v. Wainright*, 581 F.2d 1149, 1152 (5th Cir.1978); *U.S. v. Lemon*, 550 F.2d 467, 472 (9th Cir. 1977). Consent to search is not testimonial or communicative in nature, even if consent leads to the discovery of incriminating evidence. *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985).

"[The Eighth Circuit] has never held that a request to search must be preceded by Miranda warnings, or that a lack of Miranda warnings invalidates a consent to search." *United States v. Payne*, 119 F.3d 637, 643 (8th Cir. 1997). "[I]t is well established that consenting or refusing to consent to a search is not subject to suppression under *Miranda*." *United States v. Tapia-Rodriguez*, 968 F.3d 891, 895 (8th Cir. 2020) (citing *Cody*, 755 F.2d at 1330). Any violation of Hudson's request for counsel following his *Miranda* warnings is thus only relevant to the voluntariness of the consent in view of the totality of the circumstances. *Cody,* 755 F.2d at 1330 (citing *Smith*, 581 F.2d at 1152).

13

### b. Fourth Amendment

"'A consensual search does not violate the Fourth Amendment if the consent was given voluntarily and without coercion.'" *United States v. DaCruz-Mendez*, 970 F.3d 904, 908 (8th Cir. 2020) (quoting *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005). The government "has the burden of proving the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983) (citations omitted). "'Whether or not the suspect has actually consented to a search, the Fourth Amendment requires only that the police reasonably believe the search to be consensual.'" *United States v. Guerrero*, 374 F.3d 584, 588 (8th Cir. 2004) (quoting *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). Accordingly, this court's "focus is not whether [Hudson] subjectively consented, but rather, whether a reasonable officer would believe consent was given and can be inferred from words, gestures, or other conduct." *Guerrero*, 374 F.3d at 588.

When considering the totality of the circumstances, Courts look at various factors, none of which are determinative. See *United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006) (listing factors). Factors relevant to the analysis include:

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [her] Miranda rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in

a secluded location; and (6) whether the individual stood by silently or objected to the search.

United States v. Golinveaux, 611 F.3d 956, 959 (8th Cir. 2010). Many of these factors are not argued by Hudson or relevant to the present facts, and thus are not specifically addressed herein.

In support of his argument that he did not voluntarily consent to search his cell phone, Hudson points to the following:

(1) his allegation that, Officer Bolte "demanded" that Hudson surrender his phone. This allegation is seemingly based upon Officer Bolte's statement "Here's another thing, the phone's going to have to come with me."
(2) his allegation that, immediately after seizing Hudson's phone, Officer Bolte represented to Hudson that he "would get a warrant" if Hudson did not consent to a search of his phone; and
(3) Hudson's request for counsel.

Filing No. 72 at 13-15.

Upon review of the interrogation and testimony of Investigator Bolte, which it finds credible, the Court concludes it was reasonable for Investigator Bolte to believe Hudson consented to the search of his cell phone.

First, as previously discussed, Hudson was 24 years old and of at least average intelligence. There are no indications that he was under the influence of drugs or alcohol, and he had previous experience with the criminal justice system. Hudson was in custody on an unrelated warrant, but he had not been interrogated for a long period of time, Investigator Bolte did not use threats or misrepresentations, and Hudson consented both verbally and in writing.

15

Investigator Bolte explained to Hudson that he would be going to jail on the outstanding warrant so he would not have his phone until he was out of jail. Filing No. 92, Exhibit 102 at 45. Shortly after Investigator Bolte seeks Hudson's consent to search his phone Hudson asks to call his attorney. Filing No. 92, Exhibit 102 at 45. Investigator Bolte allows Hudson to attempt to contact his attorney, but Hudson is unsuccessful. *Id.* at 46-47.

Investigator Bolte does not ask Hudson a question or seek consent after Hudson attempts to contact his attorney. Here, Investigator Bolte simply responded to statements initiated by Hudson. Thereafter, Hudson brings up the search of his phone unprompted. Filing No. 92, Exhibit 102 at 48. Investigator Bolte again advises Hudson that it is his decision. *Id.* at 49. Hudson later asks about consulting his attorney again. *Id.* at 52. And again, Investigator Bolte tells him he does not have to consent, he can consult his lawyer, and explains the warrant process. *Id.* at 52-54.

Hudson's argument that his consent is invalid because it violates *Miranda* is misplaced. Even if Hudson unequivocally invoked his right to counsel, a violation of *Miranda* only informs the voluntariness of Hudson's consent. *Cody,* 755 F.2d at 1330. It does not invalidate it or make it subject to suppression. *See Payne,* 119 F.3d at 643; *Tapia-Rodriguez,* 968 F.3d at 895.

When looking at the totality of the circumstances, it is reasonable for Investigator Bolte to believe Hudson consented to the search of his cell phone. The evidence demonstrates Investigator Bolte advised Hudson at least four times that it was "100% up to him" if he wants to give consent. Filing No. 92, Exhibit 102 at 45, 49, 51, 52. Investigator Bolte tells Hudson it is "okay" if he does not consent, he does not have to consent, and he will apply for a warrant that a judge may or may not sign if he does not consent. *Id.* at 45-51. Despite all these warnings,

Hudson says "Yeah . . . you can search it" and "anything to help." *Id.* at 49, 52. He signs the consent to search form, provides his phone number, and his access code. *Id.* at 49-53.

While Hudson may have been undecided at times, Investigator Bolte went to great lengths to ensure Hudson understood that he did not have to consent to the search of his cell phone. Investigator Bolte tells Hudson that it is "up to him" multiple times and even says "you're not hurting my feelings either way." Filing No. 92, Exhibit 102 at 52. Investigator Bolte further advised Hudson on how to withdraw his consent if he changed his mind. *Id.* at 51. It is reasonable that Investigator Bolte believed Hudson consented to the search and understood the choice he was making.

After considering the totality of the circumstances, this Court finds the facts support a finding that a reasonable police officer would have believed Hudson consented to the search of his cell phone. For the reasons stated herein, the undersigned recommends that the motion to suppress be denied.

For the reasons stated above,

IT HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, that defendant's motion to suppress, Filing No. 71, be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

FURTHER, IT HEREBY IS ORDERED,

A telephonic conference with counsel will be held before the undersigned magistrate judge at 10:00 a.m. on July 1, 2024 to discuss setting any change of plea hearing, or the date of the jury trial and deadlines for disclosing experts as required under Rule 16. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

Dated this 14th day of June, 2024.

                                       BY THE COURT:

                                       *s/ Jacqueline M. DeLuca*
                                       United States Magistrate Judge